IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 3**:**19-cv-993-GCS[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI in April 2016, alleging a disability onset date of February 25, 2012. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application in October 2018. (Tr. 15-29). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. Plaintiff exhausted administrative remedies and filed a

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 11, 27).

timely complaint with this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises one issue, *i.e.*, that the ALJ did not give proper consideration to the opinions of the state agency psychological consultants.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. As a matter of convenience, most citations herein are to the DIB regulations.

disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He

determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was born in 1961 and was 56 years old on the date of the ALJ's decision.

The ALJ found that Plaintiff had severe impairments of hypertension, diabetes, obesity, COPD, major depressive disorder, and post-traumatic stress disorder. The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to do light work with physical and mental limitations. The mental limitation was that Plaintiff could only occasionally interact with others.

Based on the testimony of a vocational expert, the ALJ found that Plaintiff was able to do his past work as a graphic artist.

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by Plaintiff. He challenges only the mental aspect of the RFC assessment.

1. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in June 2018. (Tr. 37). Plaintiff was covered by Medicaid. He was divorced and lived with friends. He had worked for Yellow Pages doing advertising art until 2012. That work was mostly done on a computer. (Tr. 39-41). Plaintiff had worked for a division, which AT&T eventually sold. Plaintiff was fired after he protested that the "medical funding" was

not living up to what was promised in the union contract.   (Tr. 40-41).

Plaintiff testified that he was not taking any medicine for his psychiatric conditions because he did not think that medication "[could] make the fact that [his] family was murdered and all the thing[s] – the child abuse [to] go away."   He saw a counselor at Chestnut.[4]   (Tr. 46).

Plaintiff's attorney asked him why he could not do his past work.   Plaintiff responded that he was a "seasoned art director" and had worked in Hollywood.   He said that he was "over the hill" for that career because "they usually don't have old, fat men in Hollywood."   He said that art directing "is pretty much a young man's game."   He also said that he still had his talent and thought he could do freelance artwork if his physical problems were accommodated.   Plaintiff's attorney asked him if his PTSD and the things he saw a counselor for would affect his job at Yellow Pages.   He replied, "I think it did when it – when it happened.   It was the day after my parent's [sic] wedding anniversary, and I think I had a lot on my mind about it back then."   (Tr. 49-50).

A vocational expert testified that Plaintiff's past work would be classified as a graphic artist, which is skilled and sedentary.   (Tr. 53).

## 2. Relevant Medical Records

Plaintiff was interviewed for a Mental Health Assessment at Chestnut Health Systems in November 2015.   He said he had been treated for PTSD off and on over the years and wanted to talk to someone because he was under a lot of stress in his personal

---

[4]   Plaintiff told a counselor at Chestnut that he was abused by his adoptive parents as a child, and his brother murdered their parents in 2001.   (Tr. 533).

life. A treatment plan was formulated. The plan called for biweekly counseling sessions transitioning to monthly sessions when he was better able to manage his daily stressors. (Tr. 313, 321). There are no records indicating he began attending counselling sessions at that time.

Harry J. Deppe, Ph.D., performed a consultative psychological exam in June 2016. Plaintiff said he was applying for disability because of diabetes and high blood pressure. Dr. Deppe reviewed a treatment plan from Chestnut. Plaintiff said he was seeing a psychologist because of a history of violence in his family. Plaintiff was not taking any psychotropic medications. His mood and affect were within normal limits. He denied current or past hallucinations and had no delusional thought processes. He had no difficulty staying on task, and his memory was good. Simple reasoning skills were good. His judgment and insight were good, as was his ability to perform simple calculations. Dr. Deppe concluded that Plaintiff had an intact ability to relate to others, understand and follow simple instructions, and maintain attention required to perform simple repetitive tasks. His ability to withstand the stress and pressures of day-to-day work activity was fair to good. His prognosis was fair to good. He was capable of managing his own funds. (Tr. 326-329)

Plaintiff received primary care at Family Health Care from June 2016 to December 2016. At the first visit, he said he saw a counselor at Chestnut every week. (Tr. 389). At every visit at Family Health Care, he was noted to have a normal mood and affect, and he was oriented x 3. (Tr. 388-413).

Plaintiff saw a cardiologist in October 2016. That doctor noted normal mood and affect, normal behavior, and normal thought content. (Tr. 546).

Plaintiff was assessed again at Chestnut Health Systems in March 2017. He said he had a history of trauma and PTSD symptoms throughout his life. He said he had been receiving "therapy services" at Chestnut for the past year. He had a bachelor's degree in fine arts and had "extensive work/entrepreneurial experience" and "many leadership skills." Plaintiff identified strengths of being motivated to work to change his life and being pretty good at working with people. Individual therapy sessions and community support services to assist in managing anxiety were again recommended. (Tr. 532-534). Again, there are no records of counselling sessions occurring at that time.

Plaintiff continued to receive primary care at Family Health Care. In June 2017, he said his anxiety was the same. He had been prescribed Lexapro but did not take it. On exam, his mood and affect were normal, and he was oriented x 3. He was to continue seeing the counselor at Chestnut. (Tr. 432-434). In October 2017, he denied depression and having an anxious mood. (Tr. 451). He continued to deny depression and an anxious mood through January 2018. Mental status exams continued to be normal. (Tr. 452-462).

    3.    **State Agency Consultants' Opinions**

In July and November 2016, two state agency consultants assessed Plaintiff's mental RFC based on a review of the record. Both considered Dr. Deppe's examination as well as the other records obtained as of the time of their review. Both concluded that

Plaintiff was "moderately limited" in ability as to the following: to carry out detailed instructions, to maintain attention and concentration for extended periods, and to work in coordination with or in proximity to others without being distracted by them. He was also moderately limited in ability to interact appropriately with the public and ability to set realistic goals or make plans independently of others. (Tr. 67-69, 99-101).

## ANALYSIS

Plaintiff argues that the ALJ erred in finding that he can do his past work because the state agency consultants' opinions demonstrate that he is not capable of skilled work.

The ALJ rejected the consultants' opinions that he is moderately limited in ability to carry out detailed instructions and maintain concentration and attention, in part because they were inconsistent with Dr. Deppe's opinion. The ALJ gave significant weight to Dr. Deppe's opinion. (Tr. 27).

Plaintiff argues that Dr. Deppe's report is not inconsistent with the consultants' opinions because Dr. Deppe concluded only that Plaintiff had an intact ability to perform simple, repetitive tasks. Dr. Deppe did not explicitly rate Plaintiff's ability to carry out detailed instructions. Plaintiff's argument fails, however, because it focuses only on the ultimate conclusions and ignores Dr. Deppe's findings on examination.

As the ALJ pointed out at Tr. 26, Dr. Deppe described a normal psychological exam. For example, Dr. Deppe found that Plaintiff had normal mood and affect, had no difficulty staying on task, and gave coherent and relevant responses. He also noted that Plaintiff had good memory skills and normal abstract reasoning skills, and his insight

and judgment were good. While Dr. Deppe did not explicitly rate Plaintiff's ability to carry out detailed instructions, the ALJ could reasonably conclude that these findings contradicted the state agency consultants' opinions.

Further, Plaintiff ignores the other reasons the ALJ gave for rejecting the state agency consultants' opinions. The ALJ stated the agency consultants' opinions were inconsistent with the rest of the evidence and pointed out that none of the healthcare providers documented difficulties with Plaintiff maintaining concentration or attention. In his review of the evidence, the ALJ further noted that Plaintiff declined to take Lexapro when it was prescribed by his primary care provider. It also appeared that Plaintiff did not follow up with the counselor at Chestnut after the assessments in November 2015 and March 2017, and his mental health treatment was minimal. The ALJ acknowledged that Plaintiff had a tragic childhood and family history, but considered that he had moved beyond it to have a successful career. (Tr. 25-26). The ALJ also noted that plaintiff was fired from his job not because he was unable to do it, but because he protested the health insurance being offered after the sale of the company. In addition, Plaintiff testified that he still could work as a freelance artist. (Tr. 22-23).

The ALJ's decision must be read as a whole. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Plaintiff's failure to engage with all of the reasons given by the ALJ for rejecting the consultants' opinions undermines his argument. Considering the deferential standard of judicial review, the ALJ is required only to "minimally

articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ easily met the minimal articulation standard here. The reasons he gave for the weight he assigned to the consultants' opinions were supported by the record and took into consideration the regulatory factors.

In his reply brief Plaintiff complains that Dr. Deppe's report does not establish that he was capable of skilled or semi-skilled work. (Doc. 23, p. 2). This argument flips the burden of proof. It was Plaintiff's burden to demonstrate disability, including an inability to perform past work, not the ALJ's burden to disprove it. In any event, Dr. Deppe's normal findings support the conclusion that Plaintiff could still do his past work, as does his testimony that he still had his talent and could work as a freelance artist.

Plaintiff argues that the ALJ ignored statements he made to mental health professionals, but the ALJ was not required to credit his subjective statements over the objective findings, and Plaintiff has not challenged the ALJ's credibility determination.

Lastly, Plaintiff calls "abhorrent" the ALJ's statement that he could not find mental work-related limitations in the absence of medical evidence supporting them. (Doc. 18, p. 9). On the contrary, the ALJ's statement is correct. The fact that he found one mental limitation to be supported by the evidence did not require him to accept all limitations endorsed by the state agency consultants.

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence and medical opinions, which this Court cannot do. *See Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## CONCLUSION

After careful review of the record as a whole, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**Date:   August 10, 2020.**

Digitally signed by Judge Sison
Date: 2020.08.10 16:26:30 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**